## HAMMETT v. CHASE, TALBOT & CO.

(District Court, S. D. New York. November 29, 1907.)

1. SHIPPING—DEMURRAGE—DELAY IN MOVING VESSEL.

A charter party gave the charterer the right to move the vessel from one discharging berth to another by paying towages. The master notified the charterer that the discharge at one place would be completed in the afternoon, and was directed to obtain a tug and move the vessel to another berth designated. He was unable to obtain a tug that night, and when the vessel reached the berth the next morning it was occupied, and several days' delay resulted. *Held*, that the fault for the delay was not that of the vessel, but of the charterer, who was responsible for moving the vessel in which matter the master acted as his agent, and that he was liable for demurrage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 570, 581.

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

2. SAME—EXPENSES OF DISCHARGING—LIABILITY UNDER CHARTER PARTY.

A charterer bound by the contract to furnish the vessel with a berth for discharging *held* liable for extra wharfage which the master was obliged to pay at a designated berth, and also for overtime paid to a government inspector due to delay in discharging, for which he was responsible.

3. CUSTOMS AND USAGES—EXCLUSION BY TERMS OF CONTRACT—SHIPPING—EXPENSES OF LOADING.

Where a charter party provided for delivery of a lumber cargo alongside, within reach of the vessel's tackles, she cannot be charged with the cost of piling the lumber beyond the reach of her tackles, because of a custom of the port to pay such charges.

In Admiralty. Suit to recover demurrage and expenses incurred in discharging.

Arthur Lovell, for libellant.

Henry W. Goodrich, for respondents.

ADAMS, District Judge. This is an action brought by Hiram W. Hammett, master of the schooner Carrie A. Norton, to recover from Chase, Talbot & Company for 12 days' detention in discharging the said schooner of a cargo of laths and lumber in December, 1906, and

January, 1907, amounting to $552; also $25 paid to the United States for the services of an inspector for 5 days' overtime caused by such detention; also for $23.35 paid for towage and extra wharfage; also a balance of freight of $20.16, amounting altogether to the sum of $620.51. The defendants denied any right to recover for the alleged detention and payments, and justified the retention of the balance of freight by alleging a disbursement for piling charges paid for the vessel's account.

The charter party of the vessel shows that the respondents chartered the schooner to bring a cargo of lumber and laths from Nova Scotia to New York, agreeing to give her customary despatch in discharging and to pay $46 per day demurrage for each day she might be detained by the respondents' fault.

The vessel arrived and reported December 17, 1906, with 301,208 feet of lumber and 673,300 laths. The rate of discharge was stipulated to have been 25,000 feet of lumber and 125,000 laths per day. Allowing 48 hours for the charterers to provide a berth, according to the custom of the port, and deducting the holidays and Sundays that intervened before the final discharge, viz: Christmas, December 25th; New Years, January 1st, and Sundays, December 23rd, 30th and January 6th, the lay days would expire at noon of January 10th. The discharge was not completed until January 22d, 12 days later. The testimony shows that the respondents, availing themselves of their rights under the charter party, sent the vessel to four different places to discharge, viz: the Harlem River; 40th Street, Brooklyn; the Central Railroad Company at Jersey City; and Van Cleaf's lumber yard, Port Richmond, Staten Island. There was some detention at each of these places but the respondents do not now deny responsibility therefor, excepting at Staten Island, where they claim that delay was occasioned by the failure of the vessel to go to that place promptly on the 10th of January, when ordered by the respondents, but delayed proceeding until the 11th, in consequence of which she lost a berth which the respondents had provided for her and was delayed in discharging for that reason until the 19th when she obtained a berth and the discharging was promptly finished two days later, the 22d, at 9 o'clock.

The charter party, inter alia, provided:

"The cargo to be received and delivered alongside, within reach of the vessel's tackle. * * * Vessel to report for cargo to ——. Vessel to move to such loading and discharging berth as the charterers may direct * * *; they to have the privilege of moving her thereafter by paying towages."

The controversy respecting detention turns on the question of the responsibility for delay in getting to Staten Island.

It appears that the vessel finished discharging at Jersey City the 10th of January, and that the master then went to the respondents' office, probably in the morning, and having advised them that the vessel would be ready to move in the afternoon, received orders to go to Staten Island. He, therefore, in conformity with the respondents' directions, sought to obtain a tug to take the vessel but was unable to get one to go the 10th because it would be dark and there would be a head tide. One was not obtained until the morning of the 11th, when

the schooner was taken to the place of discharge reaching there at 9 A. M. The discharging wharf was then found to be occupied.

Assuming that the respondents provided a discharging berth for the use of this vessel the 10th, as they claim, it does not appear to have been the vessel's fault that she did not get there to occupy it. It was the duty of the charterers to furnish a tug for the towage; they did not do so but deputed the master to obtain one. He endeavored promptly to perform the delegated duty but was unable to secure a tug at once, and when the vessel reached the place, the berth was found to be occupied. I do not see that this was a fault of the vessel. The failure to obtain the berth was due to the respondents' own fault and they are, therefore, liable for the whole demurrage.

The detention was 12 days and at the rate provided for demurrage, the libellant is entitled to recover $552.

The other items, mentioned above, were established as follows:

$10: Bill paid for towing from 135th to 138th Street. This was a necessary towage for which the libellant is entitled to recover.

$13.35: Bill paid for extra wharfage. The master was obliged to pay for the same at 138th Street, because the wharf there was partly private property and partly city property. This was incurred through the failure of the respondents to furnish a proper berth and they should justly pay for same.

$25: Bill of the United States for 5 days' overtime paid for the services of an inspector. This expense was caused by the delay in discharging and should be paid for by the respondents.

$20.16: Amount deducted from the freight by the respondents upon an alleged custom for the vessel to pay for piling of the cargo beyond the reach of the vessel's tackles. The contract in this case provided for the delivery alongside within reach of the vessel's tackles, and can not be overcome by proof as to custom, which is opposed to the agreement. The libellant is also entitled to recover this amount.

The whole amount due the libellant is $620.51, with interest, for which a decree may be entered.